**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**


TRUSTEES OF THE LABORERS'
DISTRICT COUNCIL AND CONTRACTORS'
PENSION FUND OF OHIO,

      Plaintiffs,

   vs.                             **Civil Action 2:14-cv-102**
                                       **Judge Economus**
                                       **Magistrate Judge King**


JERRY L. MASSIE,

      Defendant.


<u>REPORT AND RECOMMENDATION</u>

    This matter is before the Court on *Plaintiffs' Motion for Default Judgment*, Doc. No. 8 ("*Motion for Default Judgment*").  For the reasons that follow, it is **RECOMMENDED** that the *Motion for Default Judgment* be **DENIED**.

<u>I. Relevant Background</u>

    Plaintiffs, Trustees of the Laborers' District Council and Contractors' Pension Fund of Ohio ("plaintiffs"), administer a multi-employer pension fund pursuant to a trust agreement ("The Trust Agreement").  On May 29, 2012, plaintiffs filed a separate action in this Court against Excel Contracting, Inc. ("Excel"), and I Construct, LLC ("I Construct"). *Trustees of the Laborers' District Council and Contractors' Pension Fund of Ohio v. Excel Contracting, Inc. et al.*, 2:12-cv-00462 (S.D. Ohio)(hereinafter "2:12-cv-00462").  In 2:12-cv-00462, plaintiffs alleged violations of the Trust Agreement and the

Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments of 1980 ("MPPA"), 29 U.S.C. § 1001, *et seq.* Specifically, plaintiffs alleged that Excel withdrew from the multi-employer pension fund and was thereby subject to withdrawal liability pursuant to the terms of the Trust Agreement and the MPPA amendments to ERISA. Plaintiffs moved for summary judgment in that case. On April 3, 2014, the undersigned recommended that plaintiffs' *Motion for Summary Judgment* be granted and that plaintiffs be awarded a total of $273,837.44 in withdrawal liability, interest, liquidated damages, attorneys' fees, and costs for the period of January 8, 2012 until January 7, 2014. 2:12-cv-00462, *Report and Recommendation*, Doc. No. 42. The undersigned also recommended that plaintiffs be awarded additional interest on the unpaid balance accruing after January 7, 2014 as calculated according to the terms of the Trust Agreement. *Id.* Objections to that recommendation are currently due on April 28, 2014. 2:12-cv-00462, *Order*, Doc. No. 44.

While 2:12-cv-00462 was proceeding, plaintiffs filed this action on January 28, 2014 against defendant Jerry L. Massie ("defendant"). In this case, plaintiffs allege that defendant, an individual, owned one hundred per cent of the outstanding shares of Excel and one hundred per cent of the membership shares of I Construct. *Complaint*, Doc. No. 1, ¶¶ 9, 14-15. Plaintiffs also allege that Excel executed a collective bargaining agreement that bound Excel to the terms of the Trust Agreement and required Excel to submit contributions to the pension fund administered by plaintiffs. *Id.* at ¶¶ 12-13. Plaintiffs further allege that Excel withdrew from the pension plan on or before

2

December 31, 2010, and thereby incurred withdrawal liability.  *Id.* at ¶ 20.  Plaintiffs do not, however, allege that defendant was a signatory to the collective bargaining agreement or that defendant was an "employer" under the MPPA amendments to ERISA.  *Id.* at ¶¶ 7-8, 12.  Similarly, plaintiffs do not allege that defendant was bound by the terms of the Trust Agreement.  *Id.* at ¶ 12.  Instead, plaintiffs allege that defendant was, "at all relevant times a member of the same controlled group as Excel within the meaning of Internal Revenue Code and ERISA, 29 U.S.C §§ 1301(b)(1) and 1401(f)(3)(B)."  *Id.* at ¶ 10.

After filing the *Complaint* in this action, plaintiffs executed service of process pursuant to S.D. Ohio Civ. R. 4.2. Doc. No. 3, 4, 5.  After defendant failed to respond to the Complaint, his default was entered by the Clerk on March 16, 2014.  *Clerk's Entry of Default*, Doc. No. 7.  Plaintiff thereafter filed the *Motion for Default Judgment* pursuant to Fed. R. Civ. P. 55(b)(1).

## II. Law and Analysis

The undersigned recommends that Plaintiffs *Motion for Default Judgment* be denied.  Plaintiffs' affidavit in support of their motion is deficient.  Moreover, entry of default is not appropriate because the allegations in the *Complaint*, even accepted as true, do not state claims against defendant in his individual capacity.

Applying for a default judgment is a two-step process.  First, an entry of default must be secured pursuant to Fed.R.Civ.P. 55(a).  This subsection provides that "[w]hen a [defendant] has failed to plead or otherwise defend as provided by these rules" and that failure is

3

brought to the clerk's attention by affidavit or otherwise, the clerk shall enter the party's default.  Fed.R.Civ.P. 55(a).

After completing this step, a party may move for entry of default judgment pursuant to Fed.R.Civ.P. 55(b).  An entry of default judgment under this subsection requires affirmation that the person against whom the default judgment is sought is not: (1) a minor; (2) an incompetent person; (3) a member of the armed services entitled to protection against default pursuant to the Soldiers' and Sailors' Civil Relief Act of 1940, 50 U.S.C. Appendix § 401 *et seq.;* or (3) an officer or agency of the United States. *See, e.g.,* Fed.R.Civ.P. 55(b); Advisory Committee Notes to Fed.R.Civ.P. 55, Supplementary Note.  A movant may satisfy this requirement by submitting an affidavit stating that the non-moving party does not fall into one of these categories. The affidavit submitted by plaintiffs in support of their *Motion for Default Judgment* does not so state.  Accordingly, the clerk correctly declined to enter a default judgment in this matter.

Even if plaintiffs had satisfied this requirement, the Court concludes that entry of default judgment is nevertheless inappropriate.  As a general rule, default judgments are disfavored. *McBroom v. HR Director Franklin Cty. Bd. of Elections*, No. 2:12-CV-01074, 2014 WL 116369, at * 5 (S.D. Ohio Jan. 14, 2014) (citing *Walton v. Rogers,* No. 88-3307, 860 F.2d 1081, at *1 (6th Cir. Oct. 19, 1988). Moreover,

> [w]hen considering whether to enter a default judgment, a
> court should take into account: 1) possible prejudice to
> the plaintiff; 2) the merits of the claims; 3) the
> sufficiency of the complaint; 4) the amount of money at
> stake; 5) possible disputed material facts; 6) whether the

default was due to excusable neglect; and 7) the preference
for decisions on the merits.

*Russell v. City of Farmington Hills*, No. 01-2212, 2002 WL 818304, at
*2 (6th Cir. April 29, 2002) (citing *Eitel v. McCool*, 782 F. 2d 1470,
1472 (9th Cir 1986)). Applying these factors, the Court finds that the
*Complaint* is insufficient in that it fails to allege facts
establishing defendant's individual liability.

ERISA guarantees that employees not lose anticipated benefits by
the termination of pension plans before adequate funds accumulate.  29
USC § 1001(c).  The MPPAA, (Title IV of ERISA), furthers that goal by
making an "employer" that completely or partially withdraws from a
multi-employer plan subject to withdrawal liability. 29 U.S.C. §
1381(a).  Nonetheless, the United States Court of Appeals for the
Sixth Circuit has held that controlling shareholders and corporate
officers are not employers under the MPPAA and are not personally
liable for their companies' withdrawal liability unless there is
reason to pierce the corporate veil.  *Scarbrough v. Perez*, 870 F.2d
1079, 1084 (6th Cir. 1989).  In reaching this conclusion, the Court of
Appeals explained that personal liability would undermine the goals of
the MPPAA by discouraging controlling shareholders and officers from
directing their corporations to participate in multi-employer plans.
*Id.*  Moreover, the Sixth Circuit noted that the MPPA does not include
any indication that Congress intended to disregard the fact of
incorporation for purposes of withdrawal liability.  *Id.*

The facts alleged in plaintiffs' *Complaint,* even if taken as
true, do not establish defendant's individual liability under a
piercing theory.  Plaintiffs allege that defendant owned one hundred

per cent of the outstanding shares of Excel and one hundred per cent of the membership shares of I Construct. *Complaint*, Doc. No. 1, ¶¶ 9, 14-15. The *Complaint* also alleges that defendant was the landlord to and collected rent from Excel and I Construct. *Id.* at ¶¶ 17-20. But these facts are not enough to establish that Excel or I Construct were defendant's mere instrumentalities or alter egos and that piercing the veil is thus justified. A court can pierce the corporate veil only after considering such things as the undercapitalization of a corporation, the mingling of corporate and individual finances, the use of a corporation to perpetrate fraud or illegality, the disregard of corporate formalities, and whether the corporation is a mere sham. *Laborers' Pension Trust Fund v. Sidney Weinberger Homes, Inc.*, 872 F. 2d 702, 704-05 (6th Ct. 1988). The *Complaint* alleges no facts related to these issues.

The *Complaint* does, however, allege that defendant "is and was, at all times a member of the same controlled group as Excel within the meaning of the Internal Revenue Code and ERISA, 29 U.S.C §§ 1301(b)(1) and 1401(f)(3)(B)." *Complaint*, at ¶ 10. In relevant part, 29 U.S.C. §§ 1301(b)(1) provides that:

> all employees of trades or businesses (whether or not incorporated) which are under common control shall be treated as employed by a single employer and all such trades and businesses as a single employer. The regulations prescribed under the preceding sentence shall be consistent and coextensive with regulations prescribed for similar purposes by the Secretary of the Treasury under section 414(c) of [the Internal Revenue Code].[1]

---

[1] 29 U.S.C. §1401(f)(3)(B) provides that any controlled group treated as a single employer under 29 U.S.C. §§ 1301(b)(1) will be treated as a single employer for purposes of statutory provisions related to arbitration requirements and proceedings.

Accordingly, "all businesses under common control are treated as a single employer for purposes of collecting withdrawal liability, and each is liable for the withdrawal liability of another." *Board of Trustees of Plumbers, Pipe Fitters, Mechanical Equipment Service, Local Union 392 Pension Fund v. Airstream Mechanical*, No. 1:08cv901, 2010 WL 3656036, at * 6 (S.D. Ohio Aug. 11, 2010)(citing *Corbett v. MacDonald Moving Servs., Inc.,* 124 F.3d 82, 86 (2d Cir.1997)). Whether businesses are under common control is resolved by reference to the Treasury regulations promulgated pursuant to § 414(c) of the Internal Revenue Code. *Id.* Those regulations define three types of controlled groups: (1) parent-subsidiary; (2) combined; (3) brother-sister. *Id.* (citing 26 C.F.R. § 1.414(c)-2).

Although common control permits related business entities to be held liable as a single employer, common control cannot be used against the individual defendants. *Airstream Mechanical,* at * 9. "Because the MPPAA refers only to 'trades or businesses' under common control, individual shareholders or officers are generally not liable for withdrawal liability under the MPPAA unless they can be considered sole proprietorships or can be reached through an alter ego or veil piercing theory." *Id.* (quoting *Brown v. Astro Holdings, Inc.,* 385 F.Supp.2d 519, 528 (E.D.Pa.2005)). For that reason, plaintiffs' control group allegations, even if true, do not establish defendant's individual liability.

### III. Conclusion

**WHEREUPON**, it is **RECOMMENDED** that *Plaintiff's Motion for Default Judgment*, Doc. No. 10, be **DENIED**.

### IV. Procedure Upon Objections

If any party seeks review by the District Judge of this *Report and Recommendation*, that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation*, specifically designating this *Report and Recommendation*, and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation*. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Smith v. Detroit Fed'n of Teachers, Local 231 etc.*, 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


Date: April 25, 2014                          *s/Norah McCann King*
                                            Norah M<sup>c</sup>Cann King
                                       United States Magistrate Judge